# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2023AP255

†Petition for Review filed

Complete Title of Case:

**MELISSA A. HUBBARD,**

    **PLAINTIFF-RESPONDENT,**

  **V.**

**CAROL J. NEUMAN, M.D.,**

    **DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | March 21, 2024 |
| Submitted on Briefs: | August 18, 2023 |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Taylor, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark T. Budzinski* and *David J. Pliner* of *Corneille Law Group, LLC*, Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Guy K. Fish*, Milton. |

COURT OF APPEALS
DECISION
DATED AND FILED

March 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP255**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021CV299**

**IN COURT OF APPEALS**

---

MELISSA A. HUBBARD,

  PLAINTIFF-RESPONDENT,

 V.

CAROL J. NEUMAN, M.D.,

  DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed.*

Before Blanchard, Graham, and Taylor, JJ.

¶1    TAYLOR, J.  Melissa A. Hubbard sued Dr. Carol J. Neuman for medical negligence.  Hubbard alleges that Dr. Neuman breached her duty of care by failing to inform Hubbard of Dr. Neuman's recommendation that Hubbard's ovaries be removed during a surgery to remove a portion of Hubbard's colon, which was

performed by Dr. Michael McGauley. Dr. Neuman moved to dismiss Hubbard's complaint for failure to state a claim. She argues that, because she was not the physician who performed the surgery in which Hubbard's ovaries were removed, she had no duty to Hubbard under the informed consent statute, WIS. STAT. § 448.30 (2021-22).[1] Dr. Neuman also moved for summary judgment regarding the causation element of Hubbard's claim, alleging that she only observed a portion of the February 2018 surgery, she confirmed that Hubbard had severe endometriosis during the surgery, and she recommended that Dr. McGauley remove Hubbard's ovaries. Dr. Neuman argued that she was entitled to summary judgment because McGauley's testimony in another lawsuit—that he would have removed Hubbard's ovaries without Dr. Neuman being present in the operating room and that it was his decision to do so—defeats Hubbard's informed consent claim against Dr. Neuman. The circuit court denied both of Dr. Neuman's motions, and this court granted Dr. Neuman's petition for leave to appeal the court's nonfinal order.

¶2      We affirm the circuit court's denial of Dr. Neuman's motion to dismiss because Hubbard's complaint alleges sufficient facts to support a claim that, pursuant to WIS. STAT. § 448.30, Dr. Neuman had a duty to inform Hubbard about the availability, benefits, and risks of reasonable alternate modes of treatment for Hubbard's pelvic endometriosis. We also affirm the court's denial of Dr. Neuman's motion for summary judgment because Dr. Neuman has not made a prima facie case for summary judgment with respect to the element of causation.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## BACKGROUND

¶3 Except as otherwise noted, the following factual allegations are taken from Hubbard's complaint, which we accept as true when considering a motion to dismiss.[2] *Cattau v. National Ins. Servs. of Wis., Inc.*, 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756.

¶4 In January 2018 and for several months thereafter, Hubbard sought medical treatment for reproductive health issues with Dr. Neuman, a licensed obstetrician and gynecologist (OB/GYN). According to Dr. Neuman's notes following a January 16, 2018 medical appointment with Hubbard:

> [Hubbard] needs to consider the removal of the left tube and ovary and if she wants definite surgery for the endometriosis - removing uterus tubes and ovaries. There is nothing she has to do as an emergency. She needs to consider these options. If she removes her uterus she will not conceive[,] but I believe her endometriosis is so severe she may need reproductive specialists to help her. She does not want to see them because her insurance does not cover this option. She will contact us when she decides. I have talked to Dr. McGauley about this patient and he is willing to see her.

---

[2] After the circuit court denied Dr. Neuman's motions, Hubbard filed an amended complaint that supplemented some of the factual allegations in the original complaint. Because Dr. Neuman's motion to dismiss is based on Hubbard's original complaint, we do not consider the additional factual allegations in Hubbard's amended complaint.

We also note that Hubbard's original complaint used "ABC Insurance Company" as a placeholder for the unknown insurance company that issued a medical malpractice insurance policy to Dr. Neuman. *See* WIS. STAT. § 807.12. In Hubbard's amended complaint, she replaced this fictitious insurance company with ProAssurance Casualty Company. Neither ProAssurance nor the fictitious ABC Insurance Company are parties to this appeal.

A reasonable inference from Dr. Neuman's medical note is that Dr. Neuman had determined that Hubbard had endometriosis in her pelvic region that could be treated surgically.

¶5      Dr. Neuman's medical note also indicates that she referred Hubbard to Dr. McGauley, who subsequently scheduled a "robotic assisted laparoscopic colon resection" surgery for Hubbard on February 13, 2018 (the "February 2018 surgery").[3]  We infer from the facts alleged in the complaint that Dr. McGauley was a physician specializing in colon surgeries.

¶6      Prior to the February 2018 surgery, Dr. Neuman engaged with Dr. McGauley in presurgery planning and discussions about the surgery.  Initially, the physicians planned for Dr. Neuman to remove Hubbard's fallopian tubes, ovaries, and uterus during the surgery, and for Dr. McGauley to remove Hubbard's sigmoid colon.  We infer from the facts alleged in the complaint, including the coordination between the physicians regarding the February 2018 surgery, that the planned ovary removal and partial colon removal were related to Hubbard's endometriosis.  Ultimately, Dr. Neuman recommended to Dr. McGauley that he should surgically remove Hubbard's ovaries during this surgery.

---

[3] Hubbard's complaint does not define "robotic assisted laparoscopic colon resection." Based on medical sources, we understand that this procedure involves a physician employing a robot to make small incisions in the patient's abdomen to remove all or part of the sigmoid colon, which is the part of the colon connected to the rectum. *See* UNIVERSITY OF MICHIGAN HEALTH, Robotic Colorectal Surgery, https://www.uofmhealth.org/conditions-treatments/surgery/robotic/colorectal (last visited Mar. 18, 2024).

¶7 During the February 2018 surgery, Dr. McGauley surgically removed a portion of Hubbard's colon and her ovaries.[4]

¶8 According to the complaint, Dr. Neuman never disclosed to Hubbard presurgery that Dr. Neuman had recommended, or would be recommending, that Dr. McGauley surgically remove Hubbard's ovaries during the February 2018 surgery. The complaint further alleges that Hubbard never advised Dr. Neuman that she opted to have her ovaries surgically removed by Dr. McGauley during the February 2018 surgery. Had she been informed of Dr. Neuman's recommendation, Hubbard alleges, she would have immediately canceled the surgery in order to consider all of her options.

¶9 Hubbard filed a medical negligence action against Dr. Neuman, alleging that Dr. Neuman breached her duty of care by failing to inform Hubbard of her presurgery recommendation to Dr. McGauley that he remove Hubbard's ovaries during the February 2018 surgery. The complaint alleges that Dr. Neuman's failure to disclose this recommendation to Hubbard was negligent because this failure was a "substantial factor and cause of the surgical removal of Hubbard's ovaries" and caused her to suffer "significant injuries."

¶10 Dr. Neuman moved to dismiss Hubbard's complaint for failure to state a claim upon which relief may be granted, as required by WIS. STAT. § 802.02(1)(a). Dr. Neuman's sole argument was that she did not have a legal duty under Wisconsin's informed consent statute, WIS. STAT. § 448.30, "to obtain

---

[4] In a separate lawsuit Hubbard brought against Dr. McGauley regarding this surgery, the Rock County Circuit Court dismissed Hubbard's action and this court affirmed the dismissal in a summary disposition. *Hubbard v. McGauley*, No. 2022AP116, unpublished op. and order (WI App Nov. 10, 2022). Hubbard later appealed the circuit court's denial of her motion to reconsider, and this court affirmed that order in a per curiam opinion. *Hubbard v. McGauley*, No. 2022AP1347, unpublished slip op. (WI App Mar. 30, 2023).

5

[Hubbard's] consent for surgery performed by another physician," namely Dr. McGauley.

¶11 Dr. Neuman also moved for summary judgment. Relying on deposition evidence that had been produced as part of a separate lawsuit that Hubbard brought against Dr. McGauley, Dr. Neuman asserted that she "did not perform or participate in the surgery or remove [Hubbard's] ovaries," that Dr. McGauley "performed the operation and removed [Hubbard's] ovaries," and that Dr. McGauley "did not base his decision to remove [Hubbard's] ovaries on Dr. Neuman's recommendation." Accordingly, Dr. Neuman argued that the evidentiary facts undermined Hubbard's claim that Dr. Neuman's alleged informed consent violation caused Hubbard's injury.

¶12 The circuit court denied both of Dr. Neuman's motions. We granted Dr. Neuman's petition for leave to appeal the court's nonfinal order as to both Dr. Neuman's dismissal and summary judgment motions. *See* WIS. STAT. RULE 809.50(3). We affirm the court's denial of both motions.

## DISCUSSION

¶13 On appeal, Dr. Neuman argues that the circuit court erred in denying her motion to dismiss for failure to state a claim and her motion for summary judgment. We address each argument in turn.

### I. Motion to Dismiss for Failure to State a Claim.

#### A. Standard of Review.

¶14 Pursuant to WIS. STAT. § 802.02, pleadings shall contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series

6

of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Sec. 802.02(1)(a). A party may file a motion to dismiss on the grounds that the complaint fails to state a claim upon which relief may be granted. WIS. STAT. § 802.06(2)(a)6. "If proof of the well-pleaded facts in a complaint would satisfy each element of a cause of action, then the complaint has stated a claim upon which relief may be granted." *Cattau*, 386 Wis. 2d 515, ¶6.

¶15 When reviewing a motion to dismiss for failure to state a claim, we accept as true all facts pled in the complaint and the reasonable inferences therefrom. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. Whether a complaint states a claim upon which relief may be granted is a question of law, and we review de novo a circuit court's order denying a defendant's motion to dismiss. *Id.*, ¶17.

## B. Informed Consent and WIS. STAT. § 448.30.

¶16 Hubbard's complaint does not explicitly identify the informed consent statute, WIS. STAT. § 448.30, as a basis for her medical negligence claim. As the circuit court here correctly observed, however, what controls whether a complaint properly states a claim for relief are the factual allegations pled in the complaint, and not the causes of action that are explicitly identified in the complaint. *See Strid v. Converse*, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983). On appeal, both parties base their arguments exclusively on potential liability created by § 448.30 and not on other statutory or common law causes of action. We follow the parties' lead and determine whether Hubbard's complaint alleges sufficient facts to state a claim for relief under § 448.30. We do not address whether any other causes of action do or could arise from the factual allegations in the complaint.

¶17     Additionally, Dr. Neuman's motion to dismiss for failure to state a claim is based solely on the argument that Dr. Neuman had no duty to Hubbard under WIS. STAT. § 448.30 to obtain her informed consent regarding the removal of her ovaries.  We therefore do not address whether Hubbard's complaint alleges sufficient facts to satisfy the other elements of her negligence claim—*i.e.*, breach of duty, causation, and damages.  With those clarifications, we now summarize common law principles for context and then turn to statutory interpretation.

¶18     "[T]he concept of informed consent developed out of the right of every person to refuse unwanted medical treatment and control what is done to [their] body."  *Hannemann v. Boyson*, 2005 WI 94, ¶43, 282 Wis. 2d 664, 698 N.W.2d 714.  In recognition of this "fundamental notion of the right to bodily integrity," Wisconsin courts created the common law doctrine of informed consent. *Bubb v. Brusky* (*Bubb II*), 2009 WI 91, ¶47, 321 Wis. 2d 1, 768 N.W.2d 903 (citation omitted).  Originally, the doctrine of informed consent involved situations in which a patient would consent to a certain procedure in an operation but, in the course of that operation, would be subjected to other, unauthorized procedures. *Id.*, ¶48.  However, the common law doctrine of informed consent also came to include cases in which "the patient had not received [adequate] information about the risks associated with the medical procedure." *Id.* (citation omitted).

¶19     As a result, our supreme court affirmatively recognizes, as part of the common law, a separate legal duty "bottomed upon a negligence theory of liability." *Hannemann*, 282 Wis. 2d 664, ¶35 (quoting *Trogun v. Fruchtman*, 58 Wis. 2d 569, 600, 207 N.W.2d 297 (1973)).  This duty requires the physician to provide "a reasonable disclosure to [the] patient of the significant risks in view of the gravity of the patient's condition, the probabilities of success, and any alternative treatment or procedures if such are reasonably appropriate." *Id.*, ¶36 (quoting *Scaria v.*

*St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 11, 227 N.W.2d 647 (1975)). The court recognizes that, although "[t]he negligence theory of liability has taken many shapes, … common to all is the existence of the duty to disclose or warn on the part of a physician and exposure to negligence liability when such duty is not properly discharged." *Bubb II*, 321 Wis. 2d 1, ¶50 (citation and emphasis omitted). The duty to inform under the common law has traditionally been "measured by the patient's 'objective' need for information material to [the patient's] decision." *Id.*, ¶51 (citation omitted). As we recently observed, "[t]he doctrine of informed consent is grounded in the doctor's duty to inform the patient of 'significant potential risks … so that [the patient can] make a rational and informed decision of whether [to] … undergo the proposed procedures.'" *Wetterling v. Southard*, 2023 WI App 51, ¶17, 409 Wis. 2d 434, 997 N.W.2d 115 (citation omitted).

¶20 The standards of this common law informed consent doctrine pertaining to a physician's duty to disclose have generally been codified in WIS. STAT. § 448.30.[5] *Hannemann*, 282 Wis. 2d 664, ¶48. This statute sets forth the duty

---

[5] WISCONSIN STAT. § 448.30 provides in full:

> Any physician who treats a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments. The reasonable physician standard is the standard for informing a patient under this section. The reasonable physician standard requires disclosure only of information that a reasonable physician in the same or a similar medical specialty would know and disclose under the circumstances. The physician's duty to inform the patient under this section does not require disclosure of:

> (2) Detailed technical information that in all probability a patient would not understand.

> (3) Risks apparent or known to the patient.

of a physician to inform a patient in the following terms: "Any physician who treats a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments." Sec. 448.30.[6] Section 448.30 originally measured the scope of a physician's informed consent duty using the "reasonable patient" standard described in the common law. *Bubb II*, 321 Wis. 2d 1, ¶57. However, in 2013, the legislature amended § 448.30 to change the "reasonable patient" to a "reasonable physician" standard. *See* 2013 Wis. Act 111. Now, a physician's duty to inform the patient under § 448.30 "requires disclosure only of information that a reasonable physician

> (4) Extremely remote possibilities that might falsely or detrimentally alarm the patient.
>
> (5) Information in emergencies where failure to provide treatment would be more harmful to the patient than treatment.
>
> (6) Information in cases where the patient is incapable of consenting.
>
> (7) Information about alternate medical modes of treatment for any condition the physician has not included in his or her diagnosis at the time the physician informs the patient.

[6] We note that the text of WIS. STAT. § 448.30 requires treating physicians to make certain disclosures pertaining to "reasonable alternate medical modes of treatment and about the benefits and risks of these treatments." Although the statute does not mention the patient's consent, the standard in informed consent cases under the common law and codified in § 448.30 is that "[a] physician who proposes to treat a patient or attempt to diagnose a medical problem must make such disclosures as will enable … the patient to exercise the patient's right to consent to, or to refuse the procedure proposed or to request an alternative treatment or method of diagnosis." *Martin v. Richards*, 192 Wis. 2d 156, 176, 531 N.W.2d 70 (1995). Hence, Wisconsin courts have routinely referred to the duty to disclose as set forth in § 448.30 as the "physician's duty to obtain informed consent." *See, e.g.*, *Hannemann v. Boyson*, 2005 WI 94, ¶49, 282 Wis. 2d 664, 698 N.W.2d 714 (the common law duty of informed consent requires chiropractors to "make such disclosures as will enable … the patient to exercise the patient's right to consent to, or to refuse, the procedure proposed or to request an alternative treatment or method of diagnosis." (citation omitted)); *Johnson v. Kokemoor*, 199 Wis. 2d 615, 620-23, 545 N.W.2d 495 (1996) (physician failed to obtain the patient's informed consent by failing to adequately inform the patient of the risks associated with the surgery). This interpretation of § 448.30 is consistent with common law negligence claims for a physician's failure to inform patients about medical options and the benefits and risks of each to allow patients to make fully informed decisions. *See Bubb v. Brusky* (*Bubb II*), 2009 WI 91, ¶¶47-50, 63, 321 Wis. 2d 1, 768 N.W.2d 903.

10

in the same or a similar medical specialty would know and disclose under the circumstances." Sec. 448.30. The 2013 amendment also limits a physician's duty to inform by not requiring disclosure of "[i]nformation about alternate medical modes of treatment for any condition the physician has not included in his or her diagnosis at the time the physician informs the patient." Sec. 448.30(7).

¶21    Although a treating physician's breach of their duty to inform under WIS. STAT. § 448.30 is rooted in negligence principles, it is a distinct form of medical malpractice, "separate and discrete from negligence in treatment." *Hannemann*, 282 Wis. 2d 664, ¶¶40, 52. Like other medical malpractice claims, an informed consent claim under § 448.30 requires proof of the four elements of negligence: (1) a duty of care on the part of the defendant physician; (2) a breach of that duty; (3) a causal connection between the breach and the injury; and (4) an actual loss or damage as a result of the injury. *Nieuwendorp v. American Fam. Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W.2d 594 (1995); *Schreiber v. Physicians Ins. Co. of Wis.*, 223 Wis. 2d 417, 434, 588 N.W.2d 26 (1999) (an informed consent claim requires a showing of a "breach of a duty that caused an injury").

## C. The Circuit Court Properly Denied Dr. Neuman's Motion to Dismiss.

¶22    On appeal, Dr. Neuman argues that Hubbard's complaint fails to state a claim for medical negligence because it does not allege sufficient facts to support a claim that Dr. Neuman had a duty to obtain Hubbard's informed consent under WIS. STAT. § 448.30 with respect to the surgery in which Hubbard's ovaries were removed. Specifically, Dr. Neuman asserts that Hubbard fails to allege sufficient facts to show that Dr. Neuman had a duty to obtain Hubbard's consent to remove her ovaries because Dr. Neuman was not the physician who actually removed Hubbard's ovaries. For the following reasons, we reject Dr. Neuman's argument.

11

## 1. Clarifying the Parties' Dispute on Appeal.

¶23   We begin by clarifying two important aspects of Dr. Neuman's arguments on appeal.  First, Dr. Neuman improperly characterizes Hubbard's cause of action as alleging that Dr. Neuman breached her duty to obtain Hubbard's *consent* for the ovarian removal surgery that Dr. McGauley performed.  However, Hubbard's claim, as alleged in her complaint, is that Dr. Neuman "breached her duty owed to Hubbard and the appropriate standard of care by failing to disclose to Hubbard pre-surgery that [Dr. Neuman] had recommended or would be recommending to [Dr.] McGauley that he should surgically remove Hubbard's ovaries during the surgery scheduled for February 13, 2018."  That is, Hubbard claims that Dr. Neuman deprived Hubbard of the ability to make an informed decision about the February 2018 surgery because Dr. Neuman failed to inform Hubbard regarding Dr. Neuman's recommendation to Dr. McGauley to remove Hubbard's ovaries.  In sum, Hubbard's cause of action arises from Dr. Neuman's alleged "failure to inform" Hubbard under WIS. STAT. § 448.30 about her recommendation to the physician performing the surgery, rather than from Dr. Neuman's failure to obtain Hubbard's consent to have her ovaries removed during the February 2018 surgery.

¶24   Second, Dr. Neuman does not dispute that a "reasonable physician in the same or a similar medical specialty" as Dr. Neuman, as that phrase is used in WIS. STAT. § 448.30, would have disclosed to Hubbard that one reasonable alternate mode of treatment for Hubbard's pelvic endometriosis would be to have her ovaries removed during the February 2018 surgery, which was Dr. Neuman's alleged recommendation to Dr. McGauley.  Instead, Dr. Neuman argues solely that she had no duty under § 448.30 with regard to the February 2018 surgery in which Hubbard's ovaries were removed because she was not the physician performing the

surgery. In other words, Dr. Neuman disputes only to whom § 448.30 applies, and does not dispute the scope of information that must be disclosed under § 448.30. Therefore, our discussion of Dr. Neuman's duty under § 448.30 addresses only whether Hubbard's complaint alleges sufficient facts to show that Dr. Neuman had a duty as a "physician who treats a patient" to inform Hubbard about reasonable options for treating Hubbard's pelvic endometriosis, including Dr. Neuman's alleged recommendation to Dr. McGauley of doing so by removing Hubbard's ovaries during the February 2018 surgery. We do not address the full scope of information that a "reasonable physician" would have provided to Hubbard.

### 2. Hubbard's Complaint Alleges Sufficient Facts to Support a Claim That Dr. Neuman Had a Duty to Inform Under WIS. STAT. § 448.30.

¶25 As noted earlier, Dr. Neuman argues that she did not have a duty to inform Hubbard under WIS. STAT. § 448.30 with respect to the ovarian removal surgery because she was not the physician who performed that surgery. In order to determine whether Dr. Neuman had a duty pursuant to this statute, we must interpret its language. The purpose of statutory interpretation is to give the statute its full, proper, and intended effect. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statute's language because it is assumed that the legislature's intent is expressed in the words it used. *Id.*, ¶¶44-45. "Statutory language is given its common, ordinary, and accepted meaning[.]" *Id.*, ¶45. If a word is not defined in a statute, we may look to recognized dictionary definitions to determine the common and ordinary meaning of the word. *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶14, 273 Wis. 2d 612, 682 N.W.2d 365. Additionally, we do not interpret statutory language in isolation, but instead in the context in which it is used and in order to avoid absurd

or unreasonable results. *Kalal*, 271 Wis. 2d 633, ¶46. The interpretation of a statute is a question of law that we review de novo. *Garcia*, 273 Wis. 2d 612, ¶7.

¶26 As discussed above, WIS. STAT. § 448.30 provides that "*[a]ny* physician who *treats* a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments." Sec. 448.30 (emphasis added). Although the word "treats" is not defined in § 448.30 or WIS. STAT. ch. 448, the ordinary meaning of this word applies to a physician's provision of care to the patient and to the physician's attempts to cure the patient, not just to the physician's performance of a particular surgery or procedure. *See Treat*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "treat," in relevant part, as "[t]o care for (a medical patient)" and "to try to cure the illness or injury of (a person) by using medicine, hospital care, surgery, etc."). We also note that a similar term—"treat the sick"—is given a broad definition in ch. 448: "'Treat the sick' means to examine into the fact, condition or cause of human health or disease, or to treat, operate, prescribe or advise for the same." WIS. STAT. § 448.01(10). Although this definition of "treat the sick" is not directly applicable to § 448.30, we note that the legislature in enacting this statute distinguished the term "treat" from other terms including "operate." This distinction indicates that the term "treat" is not synonymous with the term "operate" and undermines Dr. Neuman's argument that the duty to inform applies only to the physician who performs the "mode of treatment" disclosed. *See Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings.").

¶27 Additionally, the duty to inform applies to "any" physician who treats a patient. WIS. STAT. § 448.30. In this context, the word "any" is used as an

adjective and means "one or some indiscriminately of whatever kind." *Any*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/ any (last visited Mar. 18, 2024). By using the word "any" in § 448.30, the legislature indicated that, subject to the statutory limitations discussed elsewhere in this opinion, the duty to inform may apply to multiple physicians who treat a patient, not only to a physician who performs the surgery or procedure about which a physician informs a patient. Indeed, if the legislature had intended to limit a physician's duty to inform patients under § 448.30 to only surgeries or procedures that the physician actually performs, it could have enacted language to that effect as other states have done.[7] "We decline to read into the statute words the legislature did not see fit to write." *Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 366 Wis. 2d 318, 801 N.W.2d 316 (citation omitted). Therefore, we conclude that the duty to inform a patient about "the availability of reasonable alternative medical modes of treatment and about the benefits and risks of these treatments" applies to any physician who treats a patient, regardless of whether that physician actually performs the disclosed treatment options, and the risks and benefits of each. *See* § 448.30.[8]

¶28 Wisconsin case law on this issue supports our conclusion that a treating physician may have a duty to inform a patient about "reasonable alternate medical modes of treatment" under WIS. STAT. § 448.30, even when that physician does not or will not perform the treatment options disclosed. For instance, in

---

[7] *See, e.g.*, *Crockerham v. Louisiana Med. Mut. Ins. Co.*, 255 So. 3d 604, 612 (La. Ct. App. 2018) (observing that the pertinent statute imposes a duty to obtain a patient's informed consent only on "the physician or other health care provider who will actually perform the contemplated medical or surgical procedure" (quoting LA. STAT. ANN. § 40:1157.2(P) (2015))).

[8] As discussed in more detail below, however, the scope of information a treating physician must disclose is subject to statutory limitations. *See* WIS. STAT. § 448.30 (2)-(7).

*Bubb II*, Bubb was seen by an emergency physician for stroke-like symptoms. *Bubb II*, 321 Wis. 2d 1, ¶¶6-7. After correctly diagnosing Bubb's condition, the emergency physician called a neurologist who agreed to see Bubb as a patient. *Id.*, ¶8. However, Bubb suffered a stroke before the neurologist could see him. *Id.*, ¶11. Bubb sued the emergency physician on multiple grounds, including for failure to properly inform him of alternative diagnostic tests or treatments under § 448.30. *Id.*, ¶¶12, 17. At the close of evidence during the trial, the circuit court dismissed Bubb's informed consent claim against the emergency physician for lack of evidence. *Id.*, ¶¶18, 30. On appeal, our supreme court reversed and held that there was sufficient evidence presented at trial from which a reasonable jury could find that the emergency physician failed to adequately inform Bubb under § 448.30 about viable alternatives for treating his condition, including hospitalization and an additional diagnostic test to measure the likelihood of a stroke. *Id.*, ¶¶69-71.[9]

¶29    Although our supreme court in *Bubb II* did not squarely address whether the emergency physician was Bubb's treating physician under WIS. STAT. § 448.30, *Bubb II* is instructive because it demonstrates that a physician may have a duty to inform a patient under § 448.30 about reasonable, alternate medical treatments and the risks and benefits of each when the physician treats a patient's condition, even if they are not the physician who provides the alternate medical

---

[9] The decision in *Bubb II* was based on the previous version of WIS. STAT. § 448.30, which measured the scope of a physician's duty to inform by the "reasonable patient" standard. *See Bubb II*, 321 Wis. 2d 1, ¶57. As discussed in the text above, the legislature amended § 448.30 in 2013 to measure the scope of a physician's duty to inform by the "reasonable physician" standard and to add an additional exception to the scope of disclosure in that a treating physician is not required to disclose "[i]nformation about alternate medical modes of treatment for any condition the physician has not included in his or her diagnosis at the time the physician informs the patient." *See* 2013 Wis. Act 111. In the present case, however, as we have explained, Dr. Neuman solely disputes that she had a duty to inform Hubbard under § 448.30, and does not dispute the scope of information she would be required to disclose if she had a duty to inform. Therefore, we do not believe that the 2013 amendments to § 448.30 affect the applicability of *Bubb II* to the issue here.

16

treatments disclosed. *Id.*, ¶65 (citing *Martin v. Richards*, 192 Wis. 2d 156, 180-81, 531 N.W.2d 70 (1995)). For example, although the emergency physician in *Bubb II* did not have hospital admitting privileges and was not the professional to administer additional testing, the court stated that there was enough evidence to submit to the jury the issue of whether the emergency physician violated his informed consent duty because a "physician's duty of disclosure 'under the statute is not limited to affirmative violations of bodily integrity.'" *Id.*, ¶63 (citations and emphasis omitted). For these reasons, *Bubb II* supports our conclusion that Hubbard's complaint alleges sufficient facts to support a claim that Dr. Neuman had a duty to inform Hubbard under § 448.30 about her recommendation to Dr. McGauley that Hubbard's ovaries be removed during the February 2018 surgery, and about the benefits and risks of that procedure.

¶30 Dr. Neuman does not address, much less make any argument about, our supreme court's discussion in *Bubb II* regarding the informed consent duties of the emergency physician. She instead argues that her position is analogous to that of the neurologist as discussed in *Bubb I*, the court of appeals decision that preceded *Bubb II*. *Bubb v. Brusky (Bubb I)*, 2008 WI App 104, 313 Wis. 2d 187, 756 N.W.2d 584, *rev'd on other grounds*, 2009 WI 91, 321 Wis. 2d 1, 768 N.W.2d 903. In *Bubb I*, this court concluded that the neurologist did not have a duty of informed consent toward the patient under WIS. STAT. § 448.30 because he was not Bubb's treating physician. *Id.*, ¶21. We explained that the neurologist was merely a consulting physician and therefore did not have a physician-patient relationship with Bubb. *Id.* Although our supreme court reversed this court's decision in *Bubb I* with respect to the emergency physician, it did not disturb this court's decision with respect to the neurologist. *See Bubb II*, 321 Wis. 1, ¶24.

¶31 Dr. Neuman contends that she is in the same position as the neurologist in **Bubb I**, because neither she nor the neurologist performed the "procedure in question." We disagree. As summarized above, Hubbard's complaint alleges that Dr. Neuman, an OB/GYN physician, was Hubbard's "treating physician." Hubbard met with Dr. Neuman in January 2018 regarding Hubbard's reproductive issues. Dr. Neuman discussed treatment options with Hubbard for her pelvic endometriosis, including surgery to remove her left fallopian tube and ovary. As alleged by Hubbard, however, Dr. Neuman told her "[t]here is nothing she has to do as an emergency. She needs to consider these options…. She will contact us when she decides." According to the complaint, Dr. Neuman failed to inform Hubbard about the possibility of addressing Hubbard's pelvic endometriosis by performing the ovarian removal surgery during the planned colon surgery, despite the fact that Dr. Neuman recommended precisely this option. More specifically, as summarized above, the complaint alleges that Dr. Neuman "engaged in pre-surgery discussions and planning" for the February 2018 surgery with Dr. McGauley, planned for the removal of Hubbard's fallopian tubes, ovaries, and uterus, and ultimately recommended to Dr. McGauley that he remove Hubbard's ovaries during that surgery. It is reasonable to infer from these allegations that Dr. Neuman not only had a physician-patient relationship with Hubbard, but also had expertise as an OB/GYN regarding treatment options for pelvic endometriosis and was actively involved in Hubbard's care and in planning the February 2018 surgery, including plans for the removal of Hubbard's ovaries. Consequently, the facts as alleged by Hubbard, together with all reasonable inferences therefrom, support a claim that Dr. Neuman was far more involved in Hubbard's treatment and planning for the February 2018 surgery than the nonexistent physician-patient relationship between the neurologist and Bubb.

¶32    Dr. Neuman relies on court opinions from New York as persuasive authority to support her position. Dr. Neuman cites to *Spinosa v. Weinstein*, 571 N.Y.S.2d 747 (App. Div. 1991), and *Nisenholtz v. Mount Sinai Hosp.*, 483 N.Y.S.2d 568 (Sup. Ct. 1984), and asserts that the courts in those cases placed the duty to inform exclusively on the physician who performed the treatment or procedure at issue in each case. However, assuming without deciding that New York case law could be a proper basis for persuasive authority here, those decisions do not support Dr. Neuman's position. Rather, the courts in those cases held that the duty to inform applies to both those physicians who perform a treatment or procedure and also to those who prescribe or order them. *Spinosa*, 571 N.Y.S.2d at 752 ("[E]xisting case law obligates the physician who has prescribed or is to perform the procedure to obtain the patient's informed consent."); *Nisenholtz*, 483 N.Y.S.2d at 573 ("The referring physician should be held liable only when that physician has ordered a procedure or actually participates in the treatment or procedure.").

¶33    Our research in other jurisdictions regarding a physician's duty to inform a patient reveals two decisions from California that are particularly analogous to the facts in this case and that provide instructive analysis.[10] In *Wilson*

---

[10] These two decisions are based on California common law, which imposes an obligation of disclosure on physicians that is similar to WIS. STAT. § 448.30: "[T]he obligation of a treating physician [is] 'of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each.'" *Arato v. Avedon*, 858 P.2d 598, 605 (Cal. 1993) (quoting *Cobbs v. Grant*, 502 P.2d 1, 10 (Cal. 1972)). Wisconsin's common law duty to inform is codified in § 448.30 and is based "to a substantial degree" on cases from other jurisdictions, including California. *See Hannemann*, 282 Wis. 2d 664, ¶48 ("[Section] 448.30 was enacted in order to codify the common-law standards for informed consent set forth in *Scaria* [*v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 227 N.W.2d 647 (1975)]."); *see also Scaria*, 68 Wis. 2d at 13 (holding that Wisconsin's common law duty to inform is based on cases from other jurisdictions, including *Cobbs*, the 1972 California opinion). Therefore, cases interpreting California's common law duty of physicians to disclose treatment options and risks may be helpful in interpreting the duty to inform as codified in § 448.30.

*v. Merritt*, 48 Cal. Rptr. 3d 630 (Ct. App. 2006), a physician who specialized in physical and rehabilitative medicine recommended that his patient undergo a medical procedure performed by a chiropractor but without disclosing the risks of the procedure to the patient. *Id.* at 634. As a result of injuries the patient sustained during the procedure, he brought a medical negligence claim against the physician and the chiropractor who performed the procedure for failing to advise him of the risks of the procedure. *Id.* at 633. Following the patient's presentation of his case at trial, the physician moved for a "nonsuit," arguing that because he was not the health care provider who performed the procedure which resulted in the patient's injuries, he had no informed consent duty to disclose the risks to the patient of the procedure the physician had recommended. *Id.* at 636.

¶34 The California Court of Appeal rejected the physician's argument that he had no duty to disclose the risks of the treatment because he did not perform the procedure at issue. *Id.* at 638-40. The court reasoned that, given that the physician suggested the treatment at issue, recommended that the procedure be performed by a specific chiropractor, discussed the procedure with the patient, and assisted the chiropractor during the procedure by administering an injection and holding the patient stable, there was enough evidence that no proper disclosures were made to send the informed consent claim to the jury. *Id.* at 640.

¶35 Similarly, in *Quintanilla v. Dunkelman*, 34 Cal. Rptr. 3d 557 (Ct. App. 2005), the California Court of Appeal held that a gynecologist had a duty of informed consent to the patient regarding the gynecologist's recommendation to another physician that the physician surgically remove a lesion on the patient's labia, even though the gynecologist did not perform that surgery. *Id.* at 574-75. The court rejected the gynecologist's argument that he could not be held responsible for obtaining the patient's informed consent because he neither treated nor operated on

20

the patient, but only referred her to the operating physician. *Id.* at 574. The court explained that the gynecologist's role "was more than merely that of a referring physician" because he owned the clinic to which he referred the patient, diagnosed the patient's condition, discussed treatment options with the patient, and directed the other surgeon to perform the surgery. *Id.* at 574-75.

¶36 In both of the California cases, as alleged here, neither physician performed the procedure that directly resulted in the patient's injury. But according to the allegations, each physician was involved in providing care to the patient, recommending the procedure at issue, and referring the patient to a specific health care professional to perform the procedure, without disclosing the risks of the recommended procedure to the patient. This involvement was enough to create an informed consent claim under California informed consent common law, which imposes an informed consent duty similar to Wis. Stat. § 448.30. The reasoning in these two decisions further supports our conclusion that Hubbard's complaint alleges sufficient facts to establish that Dr. Neuman was Hubbard's treating physician and therefore had a duty under § 448.30 to inform Hubbard about the availability, benefits, and risks of reasonable alternate treatment options with respect to Hubbard's pelvic endometriosis.

¶37 We reject Dr. Neuman's argument that it "would lead to absurd and unworkable results" if a physician who does not perform the procedure at issue has a duty to inform the patient about the availability, benefits, and risks of reasonable alternate treatment options. According to Dr. Neuman, this would result in discouraging "the intra-disciplinary communication and cooperation that is critically important to effective patient care." For instance, Dr. Neuman asserts that, if this duty is not limited to the physician actually performing the surgery or procedure, then all family practitioners or primary care providers who ever refer a

21

patient to a specialist could be liable if the referring physician fails to disclose the risks associated with the care or treatment provided by the specialist.

¶38 As explained above, the allegations in the complaint, and the reasonable inferences, assert that Dr. Neuman was Hubbard's treating OB/GYN, had expertise as an OB/GYN in the treatment options for pelvic endometriosis, diagnosed Hubbard's pelvic endometriosis, was actively involved in the planning and preparations for the removal of Hubbard's ovaries during the February 2018 surgery, initially planned to perform the removal of Hubbard's fallopian tubes, ovaries, and uterus during that surgery, and recommended that Dr. McGauley remove Hubbard's ovaries. Recognizing that Hubbard has alleged sufficient facts to support a claim that Dr. Neuman had a duty to inform Hubbard in this situation protects Hubbard's ability "to intelligently exercise [her] right to consent or to refuse the treatment or procedure proposed." *See Scaria*, 68 Wis. 2d at 13.

¶39 In further response to Dr. Neuman's "absurd and unworkable" objection, as noted above, WIS. STAT. § 448.30 places limits on the information that a treating physician must disclose to the patient. As discussed above, § 448.30 requires the disclosure of only "information that a reasonable physician in the same or a similar medical specialty would know and disclose under the circumstances." Sec. 448.30. The statute specifically details other information that does not need to be disclosed by a treating physician, including "[r]isks apparent or known to the patient," "extremely remote possibilities that might falsely or detrimentally alarm the patient," and perhaps most limiting, "[i]nformation about alternate medical modes of treatment for any condition the physician has not included in his or her diagnosis at the time the physician informs the patient." Sec. 448.30(3), (4), (7). As our supreme court recognized in *Bubb II*, the statute's explicit limitations on

liability minimize the risk that physicians "will be required to provide patients with information outside their field of knowledge." ***Bubb II***, 321 Wis. 2d 1, ¶76.[11]

¶40 In sum, the facts alleged in Hubbard's complaint and the reasonable inferences that can be drawn from those allegations, when accepted as true, support a claim that Dr. Neuman was Hubbard's treating physician and therefore had a duty to disclose the availability, benefits, and risks of reasonable alternate modes of treatment under WIS. STAT. § 448.30 regarding Hubbard's pelvic endometriosis. Because Dr. Neuman does not challenge any other element of Hubbard's negligence claim in her appeal of the circuit court's denial of her motion to dismiss, we conclude that the court properly denied Dr. Neuman's motion to dismiss.

## II.  Summary Judgment.

### A.  Governing Principles and Standard of Review.

¶41 We review a circuit court's decision granting or denying summary judgment independently, applying the same methodology as the circuit court. ***Mrozek v. Intra Fin. Corp.***, 2005 WI 73, ¶14, 281 Wis. 2d 448, 699 N.W.2d 54. On summary judgment, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

---

[11] As discussed, at the time ***Bubb II*** was decided, WIS. STAT. § 448.30 measured the physician's duty to inform using the "reasonable patient" standard. ***Bubb II***, 321 Wis. 2d 1, ¶57. However, the statute contained an exception that did not require disclosure of "[i]nformation beyond what a reasonably well-qualified physician in a similar medical classification would know." Sec. 448.30(1) (2007-08).

¶42    In reviewing a motion for summary judgment, we apply a well-established methodology. We first examine the pleadings to determine whether claims have been stated and whether a material factual issue is presented. ***Preloznik v. City of Madison***, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). Next, we examine the moving party's (here, Dr. Neuman's) affidavits "for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim." ***Id.*** Finally, if the moving party has made a prima facie case for summary judgment, we examine "the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary." ***Id.***

## B. The Circuit Court Properly Denied Dr. Neuman's Summary Judgment Motion.

¶43    Dr. Neuman argues that she is entitled to judgment as a matter of law because there is no genuine dispute of material fact regarding the element of causation in Hubbard's claim. *See* ***Schreiber***, 223 Wis. 2d at 434 (holding that a plaintiff alleging a failure to inform, like other medical malpractice claims, must show a "breach of a duty that caused an injury"). In support, Dr. Neuman relies exclusively on a portion of Dr. McGauley's deposition in a related case in which he testified that he would have removed Hubbard's ovaries regardless of whether Dr. Neuman was present at the surgery and that it was his decision:

> [Question:] Okay. Doctor, if Dr. Neuman had not been present during the surgery, would you have still performed and undertaken the procedures that you testified here to about?

[Dr. McGauley:] Absolutely. Yes.

[Question:] Okay. It would have been your decision; correct?

[Dr. McGauley:] Absolutely.

The circuit court determined that there is a genuine dispute of material fact because a reasonable jury might not believe Dr. McGauley's deposition testimony. On appeal, Dr. Neuman argues that this determination was erroneous because Hubbard provided no evidence to dispute Dr. McGauley's testimony and thus a jury would have no evidentiary basis to disbelieve Dr. McGauley.

¶44 We conclude that the circuit court properly denied Dr. Neuman's motion for summary judgment, but we do so on different grounds than those relied on by the court. As for the first step of our analysis, we assume without deciding that Hubbard has pled a claim for relief because Dr. Neuman does not argue to the contrary in her summary judgment motion. Turning to the second step, we determine whether Dr. Neuman has made a prima facie case for summary judgment by establishing a defense that defeats Hubbard's cause of action. *See **Preloznik***, 113 Wis. 2d at 116. Because Dr. Neuman challenges only the causation element of Hubbard's claim, the issue is whether Dr. Neuman has made a prima facie case for summary judgment regarding causation.

¶45 Under Wisconsin law, the "causation" element of an informed consent claim requires the plaintiff to make two showings: (1) that the plaintiff would have agreed or not agreed to the alternate forms of care and treatment if disclosed; and (2) that the failure to disclose information was a cause of the patient's injuries. ***Martin***, 192 Wis. 2d at 182; ***Schreiber***, 223 Wis. 2d at 431 ("The logical corollary of the doctrine of informed consent is the right not to consent—the right to refuse treatment." (citation omitted)). Although Dr. Neuman does not mention this two-

part causation test on appeal, the substance of her argument involves only the second showing—*i.e.*, that her failure to inform Hubbard of her treatment recommendation was not a "substantial factor" in causing Hubbard's injuries. WIS JI—CIVIL 1023.3. Therefore, we will assume without deciding that Hubbard made a sufficient showing on the first criterion.[12]

¶46     The second part of causation at issue here is whether Dr. Neuman's failure to disclose information was a cause of Hubbard's injuries. *Martin*, 192 Wis. 2d at 182. For this part, the plaintiff must show that "the alternate forms of care and treatment would have made a difference." *Id.* A physician's negligence in failing to adequately inform a patient causes a patient's injury if that negligence was a "substantial factor" in producing the patient's injury. WIS JI—CIVIL 1023.3. Because there may be more than one cause of the patient's injury, the substantial factor test asks whether the physician's negligence was "a cause," not "the cause." *Id.*

¶47     Thus, to make a prima facie case for summary judgment with respect to this causation part, Dr. Neuman must demonstrate that her alleged failure to

---

[12] Under the first part of the causation test, Wisconsin courts employ an "objective test" that "focuses on what the attitudes and actions of the reasonable person in the position of the patient would have been rather than on what the attitudes and actions of the particular patient of the litigation actually were." *Schreiber v. Physicians Ins. Co. of Wis.*, 223 Wis. 2d 417, 434-35, 588 N.W.2d 26 (1999). As noted above, the 2013 amendment to WIS. STAT. § 448.30 changed the scope of a treating physician's *duty* to disclose from a "reasonable patient" standard to a "reasonable physician" standard. 2013 Wis. Act 111. At first glance, nothing in this amendment indicates that the legislature intended to change the "reasonable person" standard used in assessing the issue of *causation* in an informed consent cause of action. *See Wetterling v. Southard*, 2023 WI App 51, ¶23 n.9, 997 N.W.2d 115 ("[The 2013] amendment does not appear to have changed the ultimate purpose of § 448.30."). However, we need not resolve whether the 2013 amendment affected the first part of the causation test because, as discussed above, Dr. Neuman's summary judgment motion only argues that Hubbard has failed to make a showing under the second part of the causation test, *i.e.*, that Dr. Neuman's failure to disclose was a cause of Hubbard's injuries.

inform Hubbard of her recommendation was not a substantial factor in causing the removal of Hubbard's ovaries and other potential injurious medical consequences.

¶48 Dr. Neuman argues that there is no genuine dispute of material fact with respect to causation because Dr. McGauley testified that he would have removed Hubbard's ovaries even if Dr. Neuman had not been present at the surgery and that the decision was his. We disagree that Dr. Neuman has established a defense that defeats Hubbard's cause of action. First, Dr. Neuman's interpretation of Dr. McGauley's testimony, quoted above, is one inference that supports her position, but there are other reasonable inferences. One other inference would be that Dr. McGauley's testimony does not refute an allegation that he relied on, and even followed, Dr. Neuman's recommendation to remove Hubbard's ovaries. Under this interpretation, Dr. McGauley was merely saying that Dr. Neuman's presence in the operating room in itself did not matter and that he was taking responsibility for removal of the ovaries, rather than saying that he did not follow Dr. Neuman's recommendation in removing Hubbard's ovaries. At summary judgment, "[t]he inferences to be drawn from the underlying facts contained in the moving party's material must be viewed in the light most favorable to the party opposing the motion." *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979) (citations omitted). As stated by our supreme court, "summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy." *Id.* at 566. Dr. Neuman has failed to demonstrate a right to judgment here.

¶49 Second, Dr. Neuman misconstrues the pertinent causation moment as alleged by Hubbard. Hubbard alleges that the moment of causation was when she decided to proceed with the February 2018 surgery—which, as far as she was then

27

aware, was limited to the partial colon removal—without being fully informed of Dr. Neuman's treatment recommendation that Dr. McGauley remove Hubbard's ovaries during this surgery. Hubbard alleges that she would not have proceeded with the surgery had Dr. Neuman informed her of this recommendation because Hubbard wanted time to consider her options. Because Dr. Neuman does not present any evidence to rebut the moment of causation that Hubbard argues resulted in her injuries, Dr. Neuman has not provided sufficient evidence to establish a defense to Hubbard's claim as a matter of law.

¶50　For these reasons, we conclude that Dr. Neuman has failed to make a prima facie case for summary judgment, and we affirm the circuit court's decision denying Dr. Neuman's summary judgment motion.

## CONCLUSION

¶51　For the foregoing reasons, the nonfinal order of the circuit court is affirmed.

*By the Court.*—Order affirmed.