THRONE, Respondent, vs. WANDELL, Appellant.

*December 16, 1921—January 10, 1922.*

*Assault and battery: Surgical operation without patient's consent: Sufficiency of evidence: Damages.*

1. A surgical operation without the consent of the patient, if he is in possession of his faculties and in such physical health as to be able to consult about his condition, and no emergency exists making it impracticable to confer with him, is a technical assault.
2. In an action against a dentist for technical assault, plaintiff's testimony alone, though opposed to that of three witnesses for defendant, is *held* sufficient to support the finding of the jury that her teeth were extracted without her consent.
3. A judgment for $3,500 is excessive for the extraction, without plaintiff's consent, of six of her teeth, all but one of which had certainly been crowned and the other probably so, all of the teeth being broken down and the nerves dead so that they could not be filled and would, as time went on, have to be extracted. The damages should be reduced to $2,000, and the case is remanded for a new trial unless plaintiff consents to such reduction.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed, with directions.*

Action for damages for a technical assault.

The appeal is from a judgment entered January 25, 1921, in favor of the plaintiff for $3,500 damages and costs. The action was originally begun to recover damages from the defendant *L. A. Wandell* and one Dr. L. W. Baxter for personal injuries.

The plaintiff, an unmarried woman thirty-four years of age, and having been engaged as bookkeeper and accountant and also in conducting a cigar and candy business, called on Dr. Baxter, a dentist in the city of Milwaukee, to examine her upper teeth to ascertain the cause of a shooting pain which she suffered in her upper jaw. Dr. Baxter made an examination of the plaintiff but was unable to ascertain the cause of the pain, and thereupon handed the plaintiff a card which contained an outline of the teeth in both jaws, and on which card he drew a line through six of the upper teeth. Beneath the diagram, in print, were the words, "Kindly mark teeth to be extracted." It appears from the evidence that five of the six teeth indicated had been crowned and that there was no certainty as to whether or not the sixth tooth had also been crowned. The teeth that were crowned were the cuspid, lateral and central on the right side from the middle; counting back, and the central and lateral on the left side.

Dr. Baxter testified that the necessity for crowning a tooth arises when the tooth is so broken down that it has not enough life to fill. By "broken down" he meant decayed teeth and teeth where the nerves are dead. The apex of the tooth is at the end of the root, and shortly after the nerve of a tooth dies an inflammation will start at the apex, and if this is not properly attended to a pus sac will be formed. The pus from these sacs, when it enters the circulation, may produce neuralgia, rheumatism, blood poisoning, and many other ailments.

Throne v. Wandell, 176 Wis. 97.

There is no dispute in the evidence that in making out the card in question and in sending the plaintiff to the defendant *Dr. Wandell,* Dr. Baxter had in mind the taking of an X-ray examination to determine the exact condition that the teeth were in, and he so informed the plaintiff.

The defendant *Wandell* was also a dentist, engaged in extracting teeth, and he also had in his office a specialist who performed X-ray examinations, and Dr. Baxter had previously sent patients to *Dr. Wandell* for such examinations.

The plaintiff claimed that she kept the card in her pocketbook for a period of about one month, without reading it, thinking that it contained an introduction to the defendant, *Dr. Wandell.* Plaintiff testified that upon arriving at *Dr. Wandell's* office she handed the card to the office girl, and upon being ushered into defendant's office she told him she came for an examination; that Dr. Baxter could not tell what the trouble was, after looking at the teeth, and that he sent her to the defendant to ascertain the trouble; that the defendant replied, "We'll find out what the trouble is;" that while she was seated in the dental chair *Dr. Wandell* administered gas, and that when she realized that gas was being administered she protested and gave evidence of remonstration, but that she was held tight in the chair until the gas had caused her to become unconscious, and upon regaining consciousness she ascertained that the six teeth had been extracted.

*Dr. Wandell* testified that after the plaintiff had entered his office he asked her what teeth were to be extracted, and that she told him the same were indicated on the card which she had presented to the office girl. This statement of *Dr. Wandell* is also corroborated by defendant's two assistants.

After the teeth had been extracted and upon plaintiff's regaining consciousness, she suffered and exhibited great distress. She also testified that *Dr. Wandell* immediately telephoned to Dr. Baxter and learned that the latter had sent her to him for an X-ray examination, and that he, the de-

fendant, expressed his regret at the mistake which had been made.

At the close of the testimony the court directed a verdict in favor of the defendant Dr. .Baxter, and permitted the plaintiff to amend her complaint in accordance with the proof, so as to charge the defendant *Wandell* with the extraction of the teeth in question without her consent.

The case was submitted to the jury upon a special verdict, and the jury found that the defendant *Dr. Wandell* extracted the six teeth in question without plaintiff's consent, and the damages were assessed in the sum of $5,000.

Defendant's counsel thereupon moved for judgment notwithstanding the verdict, and, in the event of the denial of such motion, for an order changing the answer to the first question of the special verdict from "Yes" to "No," and for judgment in defendant's favor upon such verdict as so changed; and, in the event of the denial of the foregoing motions, for a new trial, mainly upon the ground that the verdict is unsupported by the evidence and because the damages are excessive. The court thereupon made an order denying the motions of defendant's counsel to change the answer of the jury as requested, and for judgment in defendant's favor, and for judgment notwithstanding the verdict, and ordered that the defendant's motion for a new trial be denied on condition that the plaintiff within ten days file a stipulation consenting to remit from said verdict the sum of $1,500 and to take judgment for the sum of $3,500 with costs. The plaintiff thereupon elected to take advantage of the court's offer, and filed in writing a stipulation remitting $1,500 from the verdict, and thereupon judgment was entered in favor of the plaintiff and against the defendant *Dr. Wandell* in the sum of $3,500 and costs.

Defendant's counsel assigns as error the denial of his motion for a directed verdict, and the refusal of the court to grant his motions after verdict, and the motion for a

new trial, because the verdict is contrary to the evidence and because the damages, even as reduced, are excessive.

*Robert R. Freeman* of Milwaukee, for the appellant.

For the respondent there was a brief by *Ray J. Cannon* of Milwaukee, attorney, and *M. L. Lueck* of Beaver Dam, of counsel, and oral argument by *Mr. Lueck.*

DOERFLER. J. "Where a patient is in possession of his faculties and in such physical health as to be able to consult about his condition, and where no emergency exists making it impracticable to confer with him, his consent is a prerequisite to a surgical operation by his physician." 30 Cyc. 1576, 1577. An operation without the consent of a patient under such circumstances constitutes a technical assault. *Mohr v. Williams,* 95 Minn. 261, 104 N. W. 12. See, also, cases in note in 1 L. R. A. N. S. 439–441.

The main question, therefore, involved in this case is: Were plaintiff's teeth extracted by *Dr. Wandell* without her consent? In order to pass upon this question it must be borne in mind that there is no dispute in the evidence that the plaintiff was advised by Dr. Baxter to obtain an X-ray examination and not to have the teeth extracted. It is true that the card made out by Dr. Baxter and handed to the plaintiff did not indicate anything with reference to an X-ray examination. On the contrary, the card indicated on its face that the teeth were to be extracted. The evidence is also undisputed that the plaintiff, before the extraction of her teeth, did not know what the card contained, and that she entered the office of *Dr. Wandell* for the purpose of having an examination made of her teeth so as to ascertain the cause of the pain. She testified positively that upon entering the defendant's office she told the defendant that she had been sent by Dr. Baxter for an examination to determine the cause of the pain, and she also testified that the defendant told her he would ascertain the cause. Right

here there is a very sharp conflict in the testimony of the plaintiff on one side and the testimony of the defendant and his two assistants on the other side. The defendant and his assistants testified that the defendant inquired of the plaintiff what teeth were to be extracted and that the plaintiff replied that it was indicated upon the card. This testimony of the defendant and his assistants is denied by plaintiff, and in view of the undisputed facts and circumstances in the case seems highly improbable, for if this testimony is to be believed, then knowledge was brought home to the plaintiff that she was not to submit to an examination but to an extraction of the teeth in question. Such testimony is not in harmony with the distress shown by the plaintiff immediately after ascertaining the fact that her teeth had been extracted. There is no contention on the part of the defendant that after plaintiff manifested her distress he called her attention to the claim made by him that she directed the extraction of the teeth indicated on the card. While in number the defendant has three witnesses opposed to the testimony of the plaintiff, standing alone it would appear from all the facts and circumstances in the case that plaintiff's testimony is not only highly credible, but that the jury was warranted in answering the question of the special verdict in the manner in which it did. The issue having been squarely presented to the jury by the first question in the special verdict, and there being credible evidence to support the answer of the jury thereto, such answer to such question must stand.

We now come to the error assigned based upon the amount of damages awarded by the jury. True, the court saw fit to make a material reduction in the damages. We are, however, convinced that the amount of damages in the reduced form is still greatly excessive. The teeth extracted were far from being perfect teeth. All but one of the teeth, to a certainty, had been crowned, and as to the sixth tooth

Dr. Baxter was of the opinion that it also had been crowned, but he was not entirely certain on the subject. These teeth were broken-down teeth. The nerves were dead so that the teeth could not be filled. It was only a question of time when the teeth would have had to be extracted and supplanted by some artificial means. Giving due credit to plaintiff's claim of distress and humiliation and pain, we are nevertheless firmly convinced that the highest amount which the court ought to have permitted to stand in the judgment by way of damages is the sum of $2,000.

The judgment of the circuit court is therefore reversed, and the case remanded for a new trial unless defendant, within twenty days after receiving written notice of the filing of the *remittitur* in the court below, serves upon plaintiff's counsel consent in writing to judgment in plaintiff's favor for the sum of $2,000 and costs as heretofore taxed. In case such consent as indicated is filed, judgment may be rendered upon application of plaintiff to the court having jurisdiction of the action, without notice.

*By the Court.*—It is so ordered.