**2025 WI 15**

# Supreme Court of Wisconsin



MELISSA A. HUBBARD,
*Plaintiff-Respondent-Respondent,*

*v.*

CAROL J. NEUMAN, M.D.,
*Defendant-Appellant-Petitioner.*

No. 2023AP255
Decided May 23, 2025

REVIEW of a decision of the Court of Appeals.
Rock County Circuit Court (Derrick A. Grubb, J.),
No. 2021CV299

ANN WALSH BRADLEY, C.J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, KAROFSKY, and PROTASIEWICZ, JJ., joined. ZIEGLER, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.

¶1 ANN WALSH BRADLEY, C.J. The petitioner, Dr. Carol Neuman, seeks review of a court of appeals opinion that affirmed a circuit court order denying her motion to dismiss the complaint for failure to state a claim upon which relief can be granted.[1] The court of appeals

---

[1] *See Hubbard v. Neuman*, 2024 WI App 22, 411 Wis. 2d 586, 5 N.W.3d 852 (affirming order of the circuit court for Rock County, Derrick A. Grubb, Judge).

determined that the facts alleged in Melissa Hubbard's complaint and the reasonable inferences that can be drawn from her allegations are sufficient to survive Dr. Neuman's motion to dismiss.

¶2      Hubbard claims that Dr. Neuman did not inform her of a recommendation and plan to surgically remove Hubbard's ovaries, in violation of Wisconsin's informed consent statute, WIS. STAT. § 448.30 (2017–18).[2]  After referring Hubbard to a surgeon, Dr. Neuman allegedly recommended and planned with the surgeon for the removal of Hubbard's ovaries.  According to the allegations of the complaint, Dr. Neuman planned to attend and participate in the surgery.  Ultimately, however, it was the surgeon who removed Hubbard's ovaries.  Hubbard alleges that Dr. Neuman's involvement in the surgery makes her a "physician who treats a patient" within the meaning of § 448.30, even though Dr. Neuman did not remove Hubbard's ovaries herself. Accordingly, Hubbard argues that her complaint sufficiently states a claim for relief and therefore Dr. Neuman's motion to dismiss should be denied.

¶3      Dr. Neuman demurs, advancing that the complaint should be dismissed because she was not the physician who actually removed Hubbard's ovaries.  According to Dr. Neuman, § 448.30 applies only to physicians who actually perform the treatment at issue.  In this case, she asserts that physician would be the surgeon who removed Hubbard's ovaries.

¶4      We determine that Hubbard's complaint is sufficient to survive Dr. Neuman's motion to dismiss.  When examining the sufficiency of a complaint, we accept as true all facts set forth in the complaint along with all reasonable inferences drawn from those facts.  We are required to liberally construe the complaint and dismiss only if it is clear that under no circumstances can the claimant recover.  Applying these time-honored principles leads us to conclude that Hubbard's complaint pleads facts which, if true, could entitle her to relief.

¶5      Therefore, we affirm the decision of the court of appeals.

---

[2] All references to the Wisconsin Statutes are to the 2017–18 version.

I

¶6      The essential facts set forth below are taken from Hubbard's complaint.  Because we are reviewing the circuit court's determination of a motion to dismiss for failure to state a claim, we must assume that these facts are true.[3]

¶7      In January 2018, Hubbard sought medical treatment for reproductive health issues from Dr. Neuman, a licensed obstetrician and gynecologist (OB/GYN).  Dr. Neuman diagnosed Hubbard with a "severe" case of endometriosis and advised her "to consider the removal of [her] left [fallopian] tube and ovary."  Hubbard did not consent to such an operation at that or any time and instead opted to think about it.

¶8      Dr. Neuman then referred Hubbard to her colleague, Dr. Michael McGauley, to discuss undergoing colon surgery.[4]  After a consult, Hubbard and Dr. McGauley scheduled a robotic assisted laparoscopic colon resection for February 13, 2018.

¶9      According to Hubbard's complaint, Dr. Neuman and Dr. McGauley "engaged in pre-surgery discussions and planning" for the February 13 surgery "without including or briefing Hubbard."  Hubbard makes three particular allegations with regard to these discussions and plans, which are set forth verbatim:

    a.  Both Neuman and McGauley would perform the surgery – Neuman to surgically remove the [fallopian] tubes, ovaries, and uterus – McGauley to surgically remove the sigmoid colon.

---

[3] *Yacht Club at Sister Bay Condo. Ass'n, Inc. v. Village of Sister Bay*, 2019 WI 4, ¶4, 385 Wis. 2d 158, 922 N.W.2d 95.

[4] We infer from the complaint that the colon surgery was related to Hubbard's endometriosis.  *Cattau v. Nat'l Ins. Servs. of Wisconsin, Inc.*, 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756 ("[C]ourts must accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom."  (internal quotation omitted)).

b. Neuman would attend and participate in Hubbard's scheduled February 13, 2018 surgery.

c. Neuman recommended to McGauley that he should surgically remove Hubbard's ovaries for the surgery scheduled for February 13, 2018.

¶10 Hubbard also alleges that Dr. Neuman "did not advise [her] at any time that she had recommended pre-surgery to [Dr. McGauley] that he surgically remove Hubbard's ovaries." Hubbard further avers that had she been informed of Dr. Neuman's recommendation to Dr. McGauley, she would have immediately canceled the surgery. Ultimately, Dr. Neuman did not remove Hubbard's ovaries. Instead, Hubbard's ovaries were removed by Dr. McGauley during the February 13 surgery.

¶11 Hubbard subsequently filed a medical negligence action against Dr. Neuman, alleging that Dr. Neuman was her treating physician from January 1, 2018, through February 13, 2018, and for several months thereafter, and that Dr. Neuman breached her duty of care by failing to inform Hubbard of her pre-surgery recommendation and plans.[5] Specifically, Hubbard's complaint alleges that Dr. Neuman's failure to disclose the recommendation and plans was negligent, and it caused her to suffer "significant injuries."[6]

---

[5] Hubbard brought a separate action against Dr. McGauley regarding the ovary removal. *See Hubbard v. McGauley*, No. 2022AP116, unpublished op. and order (Wis. Ct. App. Nov. 10, 2022). The Rock County Circuit Court dismissed the action after granting a motion in limine filed by Dr. McGauley. *Id.* at 4. Hubbard later appealed the circuit court's denial of her motion to reconsider, and the court of appeals affirmed that order in a per curiam opinion. *Hubbard v. McGauley*, No. 2022AP1347, unpublished slip op. (Wis. Ct. App. Mar. 30, 2023).

[6] Although Hubbard's complaint does not specifically identify the informed consent statute, WIS. STAT. § 448.30, like the circuit court, the court of appeals, and both parties here, we interpret Hubbard's complaint to allege an informed consent claim. *See* WIS. STAT. § 448.30. Generally, a plaintiff is not required to aver a specific statute in order to state a valid claim. Rather, it "is the sufficiency of the facts alleged that control the determination of whether a claim for relief is properly plead." *Strid v. Converse*, 111 Wis. 2d 418, 422–23, 331 N.W.2d 350 (1983); *Jost v. Dairyland Power Coop.*, 45 Wis. 2d 164, 169–70, 172 N.W.2d 647 (1969).

¶12    Dr. Neuman moved to dismiss Hubbard's complaint for failure to state a claim upon which relief can be granted. Her sole argument was that she was not a "physician who treat[ed]" Hubbard within the meaning of § 448.30 because she did not actually remove Hubbard's ovaries herself. According to Dr. Neuman, § 448.30 applies only to physicians who actually perform the treatment at issue. Therefore, she was not obligated to inform Hubbard about a surgery performed by another physician, namely Dr. McGauley.

¶13    The circuit court denied Dr. Neuman's motion to dismiss, determining that Hubbard's complaint was sufficient to survive a motion to dismiss. On interlocutory appeal, the court of appeals affirmed the circuit court's order. *Hubbard v. Neuman*, 2024 WI App 22, ¶2, 411 Wis. 2d 586, 5 N.W.3d 852. Specifically, the court of appeals concluded that when taking Hubbard's allegations as true along with the reasonable inferences drawn from those facts, they can support a claim that Dr. Neuman was a "physician who treat[ed]" Hubbard within the meaning of § 448.30. *Id.*, ¶40. Therefore, Dr. Neuman had a duty to inform Hubbard of her recommendation and plans to remove Hubbard's ovaries. *Id.*

II

¶14    In this case, we determine whether Hubbard's complaint is sufficient to survive a motion to dismiss. When addressing this question, we examine the informed consent statute, WIS. STAT. § 448.30. Both endeavors present questions of law that we review independently of the determinations rendered by the circuit court and the court of appeals. *Banuelos v. Univ. of Wis. Hosps. & Clinics Auth.*, 2023 WI 25, ¶¶12–13, 406 Wis. 2d 439, 988 N.W.2d 627.

¶15    In applying the law to the facts of this case, we are guided by some time-honored principles. When examining the sufficiency of a complaint, we accept as true all facts set forth in the complaint along with all reasonable inferences drawn from those facts. *Below v. Norton*, 2008 WI 77, ¶18, 310 Wis. 2d 713, 751 N.W.2d 351. We are required to liberally construe the complaint and dismiss only if it is clear that under no circumstances can the claimant recover. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205; *Below*, 310 Wis. 2d 713, ¶18.

III

¶16　　We begin by addressing the sufficiency of Hubbard's complaint, which is based on the informed consent statute. WISCONSIN STAT. § 448.30 provides that "[a]ny physician who treats a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments." WIS. STAT. § 448.30.[7] Section 448.30 codifies this court's common law standards for informed consent, *Hannemann v. Boyson*, 2005 WI 94, ¶48, 282 Wis. 2d 664, 698 N.W.2d 714, which include a physician's duty to reveal any information a reasonable physician would provide so that the patient can make an informed decision. *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 12–13, 227 N.W.2d 647 (1975); *see also* WIS. STAT. § 448.30.

¶17　　Dr. Neuman argues that Hubbard's complaint must be dismissed because it does not state a claim upon which relief can be granted. She advances that, even if all of Hubbard's allegations were true, Hubbard still would not be entitled to relief because Dr. Neuman did not actually remove Hubbard's ovaries herself. In other words, Dr. Neuman advances a blanket rule that, under all circumstances, a physician who does not actually perform the treatment at issue can never be a "physician who treats a patient" within the meaning of § 448.30. In her estimation, § 448.30 applies only to physicians who actually perform the treatment at issue. As a result, Dr. Neuman asserts that Hubbard's complaint should be dismissed.[8]

---

[7] WISCONSIN STAT. § 448.30 provides in part:

Any physician who treats a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments. The reasonable physician standard is the standard for informing a patient under this section. The reasonable physician standard requires disclosure only of information that a reasonable physician in the same or a similar medical specialty would know and disclose under the circumstances.

[8] Dr. Neuman also raises an alternative argument not raised before the court of appeals. She advances that she cannot be a "physician who treat[ed]" Hubbard within the meaning of § 448.30 because she did not "order[] the treatment in question or exercise[] control over the treatment." We typically do

¶18    We disagree with Dr. Neuman.  The essence of the inquiry is whether Hubbard's complaint sufficiently alleges that Dr. Neuman was a "physician who treat[ed]" Hubbard, even though she did not actually remove Hubbard's ovaries herself.[9]  We conclude that it does.

¶19    Informed consent cases are "fact-driven and context-specific." *Johnson v. Kokemoor*, 199 Wis. 2d 615, 647, 545 N.W.2d 495 (1996).  Each case depends on the unique facts presented.  *See Jandre v. Wis. Injured Patients & Fams. Comp. Fund*, 2012 WI 39, ¶¶19, 192, 340 Wis. 2d 31, 813 N.W.2d 627 (lead opinion).  Taking Hubbard's allegations as true and drawing all reasonable inferences from a required liberal construction of those allegations leads us to conclude that Dr. Neuman could be a "physician who treat[ed]" Hubbard, even though she did not actually remove Hubbard's ovaries herself.

¶20    First, Hubbard avers that Dr. Neuman was her treating physician at all relevant times.  Hubbard's complaint paints a picture of Dr. Neuman's intimate involvement with the removal of Hubbard's ovaries.  Hubbard alleges that Dr. Neuman was her OB/GYN from January 1, 2018, through February 13, 2018, and for several months thereafter.  As Hubbard's treating physician, Dr. Neuman diagnosed her with a "severe" case of endometriosis and advised Hubbard "to consider the removal of [her] left [fallopian] tube and ovary."  Then, Dr. Neuman referred Hubbard to her colleague, Dr. McGauley, to discuss undergoing colon surgery, presumably to treat Hubbard's endometriosis.

¶21    Second, after Hubbard agreed to undergo colon surgery, Dr. Neuman allegedly helped plan the surgery with Dr. McGauley.  The

not consider arguments not raised before the court of appeals, and we will not do so here.  *State ex rel. Zignego v. Wis. Elections Comm'n*, 2021 WI 32, ¶33, 396 Wis. 2d 391, 957 N.W.2d 208.

[9] Although Dr. Neuman acknowledged in her briefing and at oral argument that she was Hubbard's "treating physician" with regard to Hubbard's reproductive health needs, she further explained at oral argument that "[s]he wasn't the treating physician for the surgery."  As Dr. Neuman put it, "she was a treating physician in January, as the OB/GYN who met with Mrs. Hubbard [and] talked to her about her options."  However, Dr. Neuman advances that she was not a treating physician for the February surgery.

physicians' pre-surgery discussions and plans included Dr. Neuman's plan to attend and participate in Hubbard's surgery and to remove Hubbard's ovaries herself. Hubbard also alleges that Dr. Neuman recommended to Dr. McGauley that he remove Hubbard's ovaries.

¶22 Dr. Neuman's argument rests on a reading of the complaint that forecloses any possibility that she was a "physician who treat[ed]" Hubbard vis-à-vis the removal of Hubbard's ovaries. However, the complaint can be read otherwise. In fact, Hubbard's complaint paints a picture of Dr. Neuman's intended and actual involvement with the removal of Hubbard's ovaries. Based on the averments and the reasonable inferences drawn from them, this level of involvement could make Dr. Neuman a "physician who treat[ed]" Hubbard, even though she did not actually remove Hubbard's ovaries herself. In essence, Dr. Neuman's arguments are based on a misreading of the complaint and a misrepresentation of § 448.30, both of which we reject.

¶23 We need not determine whether any of Hubbard's allegations standing alone would be sufficient to state an informed consent claim. Instead, we conclude only that the sum of Hubbard's allegations is sufficient to survive Dr. Neuman's motion to dismiss. Therefore, we conclude that Hubbard could be entitled to relief under § 448.30. Accordingly, the circuit court properly denied Dr. Neuman's motion to dismiss Hubbard's complaint.[10]

¶24 We also take this opportunity to clarify and narrow the potential reach of the court of appeals opinion to limit uncertainty about the scope of § 448.30. The court of appeals based its decision on § 448.30's use of the words "[a]ny" and "treats," stating:

> [W]e conclude that the duty to inform a patient about 'the availability of reasonable alternative medical modes of treatment and about the benefits and risks of these treatments' applies to any physician who treats a patient, regardless of whether that physician actually performs the

---

[10] Our decision today does not mean that Hubbard will ultimately be entitled to relief. It merely allows Hubbard's claim to proceed past Dr. Neuman's motion to dismiss.

> disclosed treatment options, and the risks and benefits of
> each.

*Hubbard*, 411 Wis. 2d 586, ¶27 (quoting WIS. STAT. § 448.30).  We observe first that Dr. Neuman's argument does not turn on the meaning of "[a]ny."  Rather, she argues that she was not a "physician who treat[ed]" Hubbard because she did not actually remove Hubbard's ovaries herself.  Thus, we conclude that it is unnecessary to interpret the statute's use of the word "[a]ny" because this case can be resolved simply by interpreting the word "treats."

¶25    Additionally, we are hesitant to embrace such a broad interpretation of the statute given the posture of this case and the often complex nature of informed consent cases generally.  Assuredly, § 448.30 does not apply to any physician who merely sees a patient regardless of the extent of their involvement in the treatment at issue and without reference to the facts of the case.  *See Jandre*, 340 Wis. 2d 31, ¶¶19, 192 (lead opinion).  Informed consent cases are "fact-driven and context-specific." *Johnson*, 199 Wis. 2d at 647.  Yet, we cannot know how the facts will unfold at this stage.  All we have at our disposal are the allegations levied in Hubbard's complaint.  Untethered from a developed record, the court of appeals's conclusion sweeps too broadly and could be construed to extend informed consent obligations beyond the scope of § 448.30.  Therefore, we save for another day, when the record, briefs, and arguments are more fully developed, a more robust examination of the contours of the informed consent statute.

¶26    The operative question before this court is whether this patient has sufficiently pled an informed consent claim against this physician under these alleged factual circumstances.  Taking Hubbard's allegations as true and drawing all reasonable inferences from a required liberal construction of those allegations, we determine Dr. Neuman failed to show that under no circumstances can Hubbard recover.  Applying these time-honored principles leads us to conclude that Hubbard's complaint pleads facts which, if true, could entitle her to relief.  Accordingly, the circuit court properly denied Dr. Neuman's motion to dismiss Hubbard's complaint for failure to state a claim.

¶27    Therefore, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court.

ANNETTE KINGSLAND ZIEGLER, J., with whom REBECCA GRASSL BRADLEY, J., joins, dissenting.

¶28     In this case, Melissa Hubbard attempts to make an informed consent claim against Dr. Carol Neuman under WIS. STAT. § 448.30, Wisconsin's informed consent statute. According to the complaint, during the relevant time period, Dr. Neuman treated Hubbard for endometriosis. Dr. Neuman referred Hubbard to a different physician, Dr. Michael McGauley, who would perform a surgery that would help treat Hubbard's condition. Hubbard alleges that prior to the surgery Dr. Neuman and Dr. McGauley discussed removing Hubbard's ovaries during the surgery, even though Hubbard never agreed to undergo such a procedure. The discussions ranged from suggesting that Dr. Neuman would remove the ovaries during the surgery herself, to Dr. Neuman recommending Dr. McGauley remove the ovaries during the procedure. Ultimately, the complaint alleges Dr. McGauley removed Hubbard's ovaries during the surgery. Hubbard filed a complaint alleging that Dr. Neuman was negligent by failing to inform her that Dr. Neuman had recommended that Dr. McGauley remove her ovaries during the surgery.

¶29     Dr. Neuman filed a motion to dismiss for failure to state a claim upon which relief may be granted, arguing that she was not a treating physician for purposes of the surgery under WIS. STAT. § 448.30. That statute requires "[a]ny physician who treats a patient" to "inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments." § 448.30. Under this statute, Hubbard's complaint fails to state a claim. To be a treating physician under § 448.30, the physician needs to either provide the treatment at issue himself or formally order the treatment at issue. This follows from the text of the statute, its history, and the decisions of courts across the country that have addressed who qualifies as a treating physician. Hubbard does not make such allegations, so her complaint fails to state a claim upon which relief may be granted.

¶30     The court disagrees and concludes that Hubbard's complaint survives Dr. Neuman's motion to dismiss. But in doing so, the court fails to follow this court's tried-and-true method for reviewing motions to dismiss. In our traditional approach, the court first establishes what the substantive law requires a plaintiff to prove to make a valid claim. Then—and only then—does the court review the complaint to determine whether it survives the motion to dismiss. The court, however, never addresses what the substantive law requires Hubbard to prove. It merely asserts

Hubbard's allegations are sufficient to withstand Dr. Neuman's motion to dismiss. Worse, the court's near-absent analysis appears to greatly expand which physicians qualify as treating physicians under WIS. STAT. § 448.30.

¶31 We expect physicians to consult with each other, asking for the opinions and advice of their professional colleagues. Such interactions are critical to providing effective medical care to a patient. In light of the court's seemingly expansive view of WIS. STAT. § 448.30's scope, physicians will be more reticent to give suggestions and recommendations to other physicians to avoid becoming too involved in a patient's treatment. No physician will know how much involvement is sufficient under the statute to become a treating physician. The majority provides no guidelines for establishing when a physician has crossed the line.

¶32 The interpretation of the statute advanced in this dissent would not deprive patients, like Hubbard, of recourse should informed consent not be obtained prior to receiving the pertinent treatment. A patient may always file a lawsuit against the physician who actually provides the treatment at issue—in this case, the surgery. Point in fact, Hubbard attempted to do so by filing a suit against Dr. McGauley, albeit unsuccessfully for reasons unrelated to the question of who qualifies as a treating physician for purposes of WIS. STAT. § 448.30. Reading the informed consent statute more narrowly than the majority does would not leave patients without recourse if informed consent is not obtained by the physician who provides or formally orders the treatment at issue. The inevitable chilling effect today's opinion will have on physician collaboration is, therefore, needless. Accordingly, I dissent.

I

¶33 This is a review of a motion to dismiss for failure to state a claim. *See* WIS. STAT. § 802.06(2)(a)6. Such a "motion 'tests the legal sufficiency of the complaint.'" *State ex rel. Kaul v. Prehn*, 2022 WI 50, ¶10, 402 Wis. 2d 539, 976 N.W.2d 821 (quoting *DeBruin v. St. Patrick Congregation*, 2012 WI 94, ¶11, 343 Wis. 2d 83, 816 N.W.2d 878). A motion to dismiss "is not a procedure for resolving a contest about the facts or the merits of the case." 3 JAY E. GRENIG, WISCONSIN PRACTICE SERIES: CIVIL PROCEDURE § 206.11 (4th ed. 2010). We are "not concerned with whether the plaintiff actually can prove allegations in ruling on a motion to dismiss for failure to state a claim, but [we are] concerned with whether the allegations, if proven, constitute a claim for relief." *Id.* (citing *Keller v. Welles Dep't Store of Racine*, 88 Wis. 2d 24, 276 N.W.2d 319 (Ct. App. 1979));

*see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (stating a complaint is adequate even if "a recovery is very remote and unlikely").

¶34    "When testing the legal sufficiency of a claim, all facts alleged in the complaint, as well as all reasonable inferences from those facts, are accepted as true[,]" even if such facts are fairly unlikely to be true. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205 (citing *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980)); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (stating the federal rule "does not countenance [] dismissals based on a judge's disbelief of a complaint's factual allegations"). While a complaint is construed liberally so "as to do substantial justice[,]" WIS. STAT. § 802.02(6), the court cannot add facts not contained in the complaint to help it survive a motion to dismiss. *Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶19, 284 Wis. 2d 307, 700 N.W.2d 180; GRENIG, *supra*, § 206.11. We also reject legal conclusions couched as factual allegations[1] asserted in a complaint; they are "insufficient to enable a complaint to withstand a motion to dismiss." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (citations omitted). A plaintiff must "allege facts that, if true, plausibly suggest a violation of applicable law." *Id.*, ¶21; *see also Cattau v. Nat'l Ins. Servs. of Wis., Inc.*, 2019 WI 46, ¶7, 386 Wis. 2d 515, 926 N.W.2d 756 (per curiam) (stating "*Data Key* controls Wisconsin's pleading standard").

¶35    Importantly, "the sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." *Data Key*, 356 Wis. 2d 665, ¶31; *Cattau*, 386 Wis. 2d 515, ¶6 (per curiam); *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶35, 381 Wis. 2d 438, 912 N.W.2d 1. The court loses sight of this critical aspect of our standard of review for a motion to dismiss. The court's opinion has the tail wagging the dog. The court concludes that Hubbard's complaint alleges sufficient facts to ward off a motion to dismiss without ever exploring what the substantive law—here, WIS.

---

[1] "Factual assertions are evidenced by statements that describe: 'who, what, where, when, why, and how.'" *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶21 n.9, 356 Wis. 2d 665, 849 N.W.2d 693 (quoting *State v. Allen*, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433).

STAT. § 448.30—requires for her claim to be successful.[2] What our case law says, however, is that this court must determine whether adequate facts have been alleged in light of the substantive law. That is, we must first examine what the substantive law requires and then determine whether the complaint fails to state a claim for relief. *See Strid v. Converse*, 111 Wis. 2d 418, 422–28, 331 N.W.2d 350 (1983); *Voters with Facts v. City of Eau Claire*, 2018 WI 63, ¶¶27–68, 382 Wis. 2d 1, 913 N.W.2d 131; *Pagoudis v. Keidl*, 2023 WI 27, ¶¶12–42, 406 Wis. 2d 542, 988 N.W.2d 606.

¶36    Following this court's well-established method for reviewing motions to dismiss, this dissent first determines what the substantive law requires to make a valid informed consent claim under WIS. STAT. § 448.30. It then moves to evaluate whether Hubbard's complaint adequately alleges facts entitling her to relief. Finally, it concludes that the complaint does not do so.

II

¶37    Although not directly stated in her complaint, Hubbard attempts to make an informed consent claim under WIS. STAT. § 448.30. Section 448.30 provides:

> *Any physician who treats a patient* shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments. The reasonable physician standard is the standard for informing a patient under this section. The reasonable physician standard requires disclosure only of

---

[2] This court is a law declaring and clarifying court. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (stating this court's "primary function is that of law defining and law development"). If the court does not wish to declare what WIS. STAT. § 448.30 means and clarify who is a treating physician for purposes of the statute—due either to discomfort created by inadequate briefing or the procedural posture of this case, *see* majority op., ¶25 (stating this court "save[s] for another day, when the record, briefs, and arguments are more fully developed, a more robust examination of the contours of the informed consent statute")—the court should dismiss this case as improvidently granted. *See Amazon Logistics, Inc. v. LIRC*, 2024 WI 15, ¶1, 411 Wis. 2d 166, 4 N.W.3d 294 (per curiam).

information that a reasonable physician in the same or a similar medical specialty would know and disclose under the circumstances. The physician's duty to inform the patient under this section does not require disclosure of:

(2) Detailed technical information that in all probability a patient would not understand.

(3) Risks apparent or known to the patient.

(4) Extremely remote possibilities that might falsely or detrimentally alarm the patient.

(5) Information in emergencies where failure to provide treatment would be more harmful to the patient than treatment.

(6) Information in cases where the patient is incapable of consenting.

(7) Information about alternate medical modes of treatment for any condition the physician has not included in his or her diagnosis at the time the physician informs the patient.

(Emphasis added.) As the text indicates, § 448.30 applies exclusively to treating physicians. *See Wetterling v. Southard*, 2023 WI App 51, ¶21, 409 Wis. 2d 434, 997 N.W.2d 115; *see also* 2 DAN B. DOBBS ET AL., THE LAW OF TORTS § 308 (2d ed. 2011). Dr. Neuman argues that Hubbard's complaint fails to state a claim because, taking the facts alleged in the complaint as true, Dr. Neuman was not a treating physician for purposes of the surgery performed by Dr. McGauley. The question before us, then, is whether Dr. Neuman was a treating physician under § 448.30 for purposes of the February 13, 2018 surgery.

¶38    The key phrase in WIS. STAT. § 448.30 for purposes of this decision—"[a]ny physician who treats a patient"—is capable of being understood narrowly or expansively. The court of appeals in this case adopted an overly expansive view of the phrase. The court of appeals determined

the duty to inform a patient about "the availability of reasonable alternative [sic] medical modes of treatment and about the benefits and risks of these treatments" applies to any physician who treats a patient, regardless of whether that physician actually performs the disclosed treatment options, and the risks and benefits of each.

*Hubbard v. Neuman*, 2024 WI App 22, ¶27, 411 Wis. 2d 586, 5 N.W.3d 852 (quoting § 448.30). "Treats," according to the court of appeals, means "a physician's provision of care to the patient and to the physician's attempts to cure the patient, not just to the physician's performance of a particular surgery or procedure." *Id.*, ¶26 (citing *Treat*, BLACK'S LAW DICTIONARY 1808 (11th ed. 2019)).

¶39     Dr. Neuman argues that she was not a treating physician under the statute. A treating physician, according to Dr. Neuman, does not include a physician who refers a patient to another physician who ultimately provides the relevant treatment. Pointing to decisions made by courts in other states, she argues that a referring physician that does not provide the pertinent treatment may still be a treating physician, but only if the physician "orders the treatment in question or exercises control over the treatment." Dr. Neuman argues that the complaint does not allege that she performed the surgery, and there are insufficient allegations that she ordered or exercised control over the surgery.

¶40     Dr. Neuman is partially correct. WISCONSIN STAT. § 448.30's reach is limited to physicians who provide the specific treatment in question or formally order the treatment. But it does not include physicians who merely exercise some control over the treatment or have some degree of participation or involvement. This conclusion is consistent with the statutory text, its history, and the decisions of courts across the country.

¶41     As the court recognizes,[3] WIS. STAT. § 448.30 was enacted to codify the negligence theory of common law informed consent as established in this court's case law. *See Bubb v. Brusky*, 2009 WI 91, ¶57, 321 Wis. 2d 1, 768 N.W.2d 903. The legislature is presumed to enact statutes

---

[3] Majority op., ¶16.

with full knowledge of this court's case law. *Czapinski v. St. Francis Hosp., Inc.*, 2000 WI 80, ¶22, 236 Wis. 2d 316, 613 N.W.2d 120. The common law of informed consent is, therefore, the backdrop against which the statute must be read. *See Strenke v. Hogner*, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296; *State v. Hansen*, 2001 WI 53, ¶19, 243 Wis. 2d 328, 627 N.W.2d 195; *F.P.R. v. J.M.*, 137 Wis. 2d 375, 389–90, 404 N.W.2d 530 (1987). The common law of informed consent suggests that the category of treating physicians is limited in scope.

¶42 In Wisconsin, informed consent originated in the common law as a claim of battery. *Johnson v. Kokemoor*, 199 Wis. 2d 615, 628, 545 N.W.2d 495 (1996). "Underlying this theory of liability is, of course, the general feeling that a person of sound mind has a right to determine, even as against his physician, what is to be done to his body." *Trogun v. Fruchtman*, 58 Wis. 2d 569, 596, 207 N.W.2d 297 (1973) (citations omitted).

¶43 "The typical situation" under the battery theory involved a patient who would consent to one type of operation, but then underwent an operation the patient did not agree to undergo. *Id.* at 596 (citations omitted). In *Throne v. Wandell*, a patient went to a dentist to have her teeth x-rayed, but the dentist, without prior approval from the patient, removed her teeth during the procedure instead. 176 Wis. 97, 98–102, 186 N.W. 146 (1922). The *Throne* court explained common law rule this way:

> "Where a patient is in possession of his faculties and in such physical health as to be able to consult about his condition, and where no emergency exists making it impracticable to confer with him, his consent is a prerequisite to a surgical operation by his physician." An operation without the consent of a patient under such circumstances constitutes a technical assault.

*Id.* at 101 (internal citations omitted). The court in *Paulsen v. Gundersen*—a case in which a patient consented to a procedure on his ear, but underwent a more extensive procedure—said that "[i]f the radical operation was done without the consent of the patient, either express or implied, or because of an emergency recognized in the law as the equivalent of implied consent, then the operator was guilty of an assault

and would be responsible for damages resulting therefrom." 218 Wis. 578, 583–84, 260 N.W. 448 (1935).[4]

¶44     This history of the common law of informed consent suggests that "[a]ny physician who treats a patient," WIS. STAT. § 448.30, is not a broad category. Instead, it should be understood more narrowly. Common law informed consent cases premised on the battery theory of liability appear to limit the category of treating physicians to physicians that actually provide the treatment to the patient. That is, in the context of a surgery, it is the physician actually doing the surgery who must obtain informed consent. After all, it would be the performing physician that actually makes contact with the patient without consent. *See McCluskey v. Steinhorst*, 45 Wis. 2d 350, 357, 173 N.W.2d 148 (1970) (defining battery as intentional contact with another without that person's consent); *see also Trogun*, 58 Wis. 2d at 594.

¶45     Of course, this court later expanded informed consent liability, determining that informed consent claims sound in negligence in addition to battery. The court did so in *Trogun*, 58 Wis. 2d 569. Unlike the previous cases, in *Trogun*, there was no claim that the defendant performed a procedure the plaintiff did not agree to undergo. Instead, the patient claimed that the defendant did not explain the potential side effects of the drugs the physician prescribed him. *Id.* at 573, 592-93. Although the court expanded the doctrine of informed consent to include a claim of negligence for failure to explain the side effects of the treatment to a patient, there appears to be nothing in the opinion that suggests that the court expanded who a treating physician is for purposes of informed consent. *See id.* at 598–600.

¶46     Two years after *Trogun*, in *Scaria v. St. Paul Fire & Marine Insurance Co.*, the court embraced a reasonable patient standard for the duty to inform. 68 Wis. 2d 1, 12–13, 227 N.W.2d 647 (1975). Like *Trogun*, nothing in the court's opinion appears to change who a treating physician is in Wisconsin's common law. WISCONSIN STAT. § 448.30 was enacted in

---

[4] *See also Suskey v. Davidoff*, 2 Wis. 2d 503, 504, 87 N.W.2d 306 (1958) (removal of gallbladder when patient agreed to her appendix and an ovarian cyst being removed).

1981 to codify *Scaria*. *See* § 2, ch. 375, Laws of 1981.[5] In light of the above, it is unlikely that "[a]ny physician who treats a patient," § 448.30, has a broad, as opposed to a more circumscribed, meaning.

¶47     The majority of states are in accord with this court's traditional view of who constitutes a treating physician. *See Koapke v. Herfendal*, 660 N.W.2d 206, ¶17 (N.D. 2003). These states recognize it is "not necessary for every physician or health care provider who becomes involved with a patient to obtain informed consent for every medical procedure to which the patient submits." *Id.*, ¶18.[6] Liability arises when the physician provides the treatment in question himself or formally orders the treatment to be provided to the patient. *Id.*, ¶¶17–18, 23; *Johnson v. Whitehurst*, 652 S.W.2d 441, 445 (Tex. App. 1983); *Logan v. Greenwich Hosp. Ass'n*, 465 A.2d 294, 304–06 (Conn. 1983); *Stovall v. Harms*, 522 P.2d 353, 358–59 (Kan. 1974); *Halley v. Birbiglia*, 458 N.E.2d 710, 715–16 (Mass. 1983); *Shaw v. Kirschbaum*, 653 A.2d 12, 17 (Pa. 1994); 61 AM. JUR. 2D *Physicians, Surgeons, and Other Healers* § 162 (2024) (stating "only the physician or health care provider who actually gives the treatment or performs the operation has a duty to inform the patient of the risks involved and obtain the patient's informed consent" (collecting cases)); 70 C.J.S. *Physicians, Surgeons, and Other Health-Care Providers* § 136 (2018) (stating the duty to obtain informed consent "rest[s] only on the physician or other health-care provider who is treating or performing a medical procedure upon the patient" (citing *Culp v. Sifers*, 550 F. Supp. 2d 1276 (D. Kan. 2008)).

¶48     In her briefs, Dr. Neuman suggests that a physician may also qualify as a treating physician if the physician retains some control over the procedure or treatment at issue. Some states follow this rule. *Prooth v.*

---

[5] In 2013, the legislature amended WIS. STAT. § 448.30 and replaced the reasonable patient standard with a reasonable physician standard. 2013 Wis. Act. 111.

[6] *See also Johnson v. Whitehurst*, 652 S.W.2d 441, 445 (Tex. App. 1983) ("[A] surgical procedure may consist of many steps and involve many specialists. Therefore, it would be unreasonable to place a burden of full and complete disclosure upon each and every specialist involved, as to the specific methods intended to be used in an operation, and of all the possible risks involved in each step of an operation.").

*Wallsh*, 432 N.Y.S.2d 663, 665-66 (N.Y. Sup. Ct. 1980); *O'Neal v. Hammer*, 953 P.2d 561, 566 (Haw. 1998). This rule, however, is too amorphous to provide guidance for physicians and courts. The test often reduces to the vague question of whether there was a sufficient "'degree of participation.'" *Koapke*, 660 N.W.2d 206, ¶23; *Prooth*, 432 N.Y.S.2d at 665 (stating that if a physician "refers his patient to another physician and retains a degree of participation, by way of control, consultation or otherwise, his responsibility continues to properly advise his patients with respect to the treatment to be performed by the referred physician"). It is, of course, never clear how much participation is sufficient to become a treating physician. Such a rule is inconsistent with this court's common-law approach and the approach of the majority of states. Accordingly, I would not adopt this "control" or "degree of participation" test.

III

¶49    With the substantive law explored, it is time to turn to the allegations made in the complaint. It alleges that Dr. Neuman was, at the times relevant to this case, a licensed physician specializing in obstetrics and gynecology (OB/GYN). Dr. Neuman treated Hubbard's condition—endometriosis—from January 1, 2018, through February 13, 2018, and for months thereafter. On January 16, 2018, Dr. Neuman met with Hubbard. After the meeting, Dr. Neuman recorded the following in Hubbard's medical record:

> [Hubbard] needs to consider the removal of the left tube and ovary and if she wants definite surgery for the endometriosis - removing uterus tubes and ovaries. There is nothing she has to do as an emergency. She needs to consider these options. If she removes her uterus she will not conceive but I believe her endometriosis is so severe she may need reproductive specialists to help her. She does not want to see them because her insurance does not cover this option. She will contact us when she decides. I have talked to Dr. McGauley about this patient and he is willing to see her.

At no time did Hubbard tell Dr. Neuman that she wanted to have her ovaries removed.

¶50    On an unknown date in January, Dr. Neuman referred Hubbard to Dr. McGauley. Dr. McGauley then, at an unspecified time, scheduled a surgery, a "laparoscopic colon resection," that would take

place on February 13, 2018. It is reasonable to infer from the complaint that this surgery was related to treating Hubbard's endometriosis.

¶51 Prior to the surgery, Dr. Neuman and Dr. McGauley allegedly met with each other, engaging in pre-surgery planning and discussions, without Hubbard being present or informed of what was discussed afterward. Although the complaint provides no timeline for these discussions, the two apparently discussed that (a) Dr. Neuman and Dr. McGauley would perform the surgery, in which Dr. Neuman would remove Hubbard's ovaries and Dr. McGauley would remove the sigmoid colon; (b) Dr. Neuman "would attend and participate in" the surgery; and (c) Dr. McGauley "should," per a "recommend[ation]" from Dr. Neuman, "surgically remove Hubbard's ovaries" during the surgery. Dr. Neuman allegedly never told Hubbard that she recommended to Dr. McGauley that he remove Hubbard's ovaries during the surgery. On February 13, 2018, Dr. McGauley performed surgery on Hubbard, removing Hubbard's ovaries during the operation. Prior to the surgery, Hubbard never consented to Dr. McGauley removing her ovaries.

¶52 These allegations fail to state a claim for which relief may be granted. First and foremost, Hubbard does not allege that Dr. Neuman performed the February 13, 2018 surgery. The complaint instead alleges it was Dr. McGauley who performed the surgery.

¶53 In fact, Hubbard never expressly alleges that Dr. Neuman attended or participated in the actual performance of the surgery. The complaint alleges that Dr. McGauley performed the surgery, but provides no other details regarding the operation. It cannot be reasonably inferred from the other allegations in the complaint that Dr. Neuman attended or participated in the performance of the surgery either. Hubbard alleges only that Dr. Neuman and Dr. McGauley—at some unknown time prior to the surgery—discussed and planned that Dr. Neuman would remove Hubbard's ovaries during the surgery or that she would participate in the surgery in some capacity. And, at an unknown time prior to the surgery, Dr. Neuman "recommended" that Dr. McGauley be the one to remove Hubbard's ovaries. Such discussions do not suggest that Dr. Neuman ultimately attended the surgery or participated in it. That is especially so in light of the express allegation that it was Dr. McGauley, not Dr. Neuman, who performed the surgery. Accordingly, the complaint never expressly alleges, nor reasonably implies, that Dr. Neuman performed or participated in the surgery or attended the surgery on February 13, 2018.

¶54     Hubbard's complaint also does not provide allegations that plausibly suggest that Dr. Neuman formally ordered the surgery. To the contrary, the complaint alleges that Dr. Neuman spoke to Dr. McGauley about Hubbard's condition, and Dr. McGauley agreed to see her as a patient. Far from ordering the surgery, Dr. Neuman referred Hubbard to Dr. McGauley, who set up and scheduled the surgery.

¶55     Even if this court were to adopt and apply a control test (which it should not), Hubbard does not contest that the complaint fails to adequately allege that Dr. Neuman retained sufficient control over the surgery. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (lack of a response to an argument may be taken as a concession). Hubbard does, however, argue that Dr. Neuman formally prescribed or ordered the surgery. To do so, Hubbard equates a recommendation from a physician and a physician ordering a specific treatment or operation. This argument is without merit. Recommending a treatment or operation and formally ordering a treatment or operation are simply not synonymous. *See Recommendation*, BLACK'S LAW DICTIONARY 1528 (12th ed. 2024) ("1. A specific piece of advice about what to do, esp. when given officially. 2. A suggestion that someone should choose a particular thing or person that one thinks particularly good or meritorious."). Hubbard provides no support for the contention that a recommendation from a physician is equivalent to the physician formally ordering a treatment or operation.

IV

¶56     The court evidently disagrees with the analysis provided by this dissent. The court concludes that Hubbard's complaint adequately states a claim upon which relief may be granted under WIS. STAT. § 448.30. But the court's explanation for this conclusion is entirely lacking. The court never once engages with the text of § 448.30 or attempts to discern the meaning of the statute. Its opinion simply announces—after repeating the allegations in the complaint for a second time—that Hubbard's allegations are sufficient to survive a motion to dismiss. Majority op., ¶¶20–22.

¶57     Readers will search in vain for the court's explanation of who qualifies as a treating physician for purposes of the informed consent statute. All a reader will know by the time he reaches the end of the opinion is that Dr. Neuman in particular might be a treating a physician. Without any elaboration or statutory interpretation, the court asserts that

Dr. Neuman had sufficient "involvement" with the surgery to be covered by WIS. STAT. § 448.30. *Id.,* ¶¶20, 22. Said differently, the court fails to follow the "time-honored principles"[7] that govern our review of a motion to dismiss for failure to state a claim upon which relief may be granted. We must first determine what the substantive law requires and then determine whether the complaint can survive the motion to dismiss. *Strid,* 111 Wis. 2d at 422–28; *Voters with Facts,* 382 Wis. 2d 1, ¶¶27–68; *Pagoudis,* 406 Wis. 2d 542, ¶¶12–42. In this case, the court skips determining what the substantive law requires and jumps straight to declaring that the allegations in the complaint are sufficient. The court's opinion is nothing more than unadulterated *ipse dixit*.

¶58    For the foregoing reasons, I dissent.

---

[7] Majority op., ¶¶4, 15, 26.